# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

HWAG, LLC,

        **Plaintiff,**
        **Counterclaim Defendant**

   **v.**                               **Case No. 17-CV-821**

RACINE CAR DEALER LLC,

        **Crossclaim Defendant,**
and

SHAWN MONTY,

        **Defendant,**
        **Counterclaimant,**
        **Crossclaimant.**

## DECISION AND ORDER

### Procedural History

Having relatively recently purchased the assets and goodwill of a Hyundai car dealership located in West Allis, Wisconsin from BMR No. 1 LLC d/b/a Arrow Hyundai, plaintiff HWAG, LLC commenced this lawsuit on June 13, 2017, against Shawn Monty, a former Arrow Hyundai employee, and the entity that it believed to be his then-current

employer, Home Run Auto Group, LLC d/b/a Racine Hyundai. (ECF No. 1.) The complaint alleged that Monty was continuing to access his former employer's trade secrets and confidential business information.

HWAG subsequently learned that Monty's new employer was actually Racine Car Dealer, LLC, and sought leave to file an amended complaint substituting Racine Car Dealer as a defendant for Home Run Auto Group (ECF No. 13), which motion was granted on July 25, 2017. (ECF No. 17.) HWAG's amended complaint alleges misappropriation and wrongful use of confidential information and trade secrets, computer fraud, deceptive trade practices, and tortious interference with business relationships by Racine Car Dealer and Monty. (ECF No. 18, ¶¶ 1, 9.)

On August 17, 2017, Monty filed an answer to the amended complaint along with a counterclaim against HWAG and a cross-claim against Racine Car Dealer, by whom he was at that point no longer employed. (ECF No. 27.) Monty's counterclaim against HWAG included six causes of action: one count of defamation by libel, four counts of defamation by slander, and one count of tortious interference with prospective economic advantage. (ECF No. 43 at 25-31.) Racine Car Dealer filed an answer to Monty's cross-claim. (ECF No. 31.) On September 19, 2017, HWAG and Racine Car Dealer entered into a settlement agreement and HWAG's claims against Racine Car Dealer were dismissed. (ECF No. 41.)

On September 28, 2017, HWAG filed a motion to dismiss all six counts of Monty's counterclaim under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. (ECF No. 42.) Monty filed a brief in opposition to the motion to dismiss (ECF No. 44), and separately and simultaneously filed an amended answer and counterclaims. (ECF No. 43.) The amended counterclaims add several allegations (although no new counts), apparently in an attempt to remedy some of the alleged shortcomings raised in the motion to dismiss. In reply, HWAG stated that, for purposes of judicial economy, its reply was to serve not only as a reply in support of its motion to dismiss but also as its response to the amended counterclaims. (ECF No. 46 at 2, n. 1.)

Approximately one week later, Monty filed a motion for entry of default on the ground that HWAG failed to answer Monty's amended counterclaims. (ECF No. 48.) The motion argues that HWAG's reply in support of the motion to dismiss the original counterclaims is not a proper pleading in response to the amended counterclaims.

Both motions have been fully briefed. All parties have consented to have this court resolve this case. (ECF Nos. 16, 23, 29.) The court has jurisdiction under 28 U.S.C. §§ 1331 and 1367.

**Motion for Entry of Default**

Monty's motion for entry of default is not well received. Twenty five years ago the Seventh Circuit Court of Appeals adopted standards for professional conduct for those lawyers and judges practicing within the Seventh Federal Judicial Circuit. The

standards were "designed to encourage us, judges and lawyers, to meet our obligations to each other, to litigants and to the system of justice, and thereby achieve the twin goals of civility and professionalism, both of which are hallmarks of a learned profession dedicated to public service." Standards for Professional Conduct Within the Seventh Federal Judicial Circuit, Preamble. The standards are to be "reviewed and followed by all judges and lawyers participating in any proceeding in this Circuit." *Id.* The standards set forth certain duties that lawyers have to other counsel. One of those duties states: "We will not cause any default or dismissal to be entered without first notifying opposing counsel, when we know his or her identity." Standards for Professional Conduct Within the Seventh Federal Judicial Circuit, Lawyers' Duties to Other Counsel, ¶ 18.

It does not appear that counsel for Monty contacted counsel for HWAG prior to filing its motion for default judgment. Had they done so, this motion very likely would have been avoided. Among other things, one of the matters that counsel for Monty could have cleared up was the confusion they created by filing amended counterclaims while simultaneously, and separately, filing a brief in opposition to HWAG's motion to dismiss. Monty's position is that the amended counterclaims superseded the original counterclaims (ECF No. 50 at 2) and rendered the motion to dismiss moot (ECF No. 48 at 5). The problem is that, by separately filing a brief in opposition to the motion to dismiss, Monty did not treat the motion to dismiss as moot. Indeed, nowhere in his

response to the motion to dismiss does Monty state that the motion is moot or that the original counterclaims have been superseded by the amended counterclaims.

Under Rule 55(a), "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). In response to the amended counterclaims, HWAG could have withdrawn its motion to dismiss the original counterclaims and filed a new motion to dismiss the amended counterclaims-- the same arguments that support the motion to dismiss the original counterclaims apply just as much to the amended counterclaims. But in the interest of "judicial economy" (ECF No. 46 at 2, n. 1) it chose to simply go forward with the already-pending motion to dismiss rather than start over. Thus, HWAG *did* "otherwise defend" against the amended counterclaims by referring to and discussing them as part of its reply in support of its pending motion to dismiss.

In short, default judgment is not appropriate. *See Schmidt v. Hudec*, 486 F. Supp. 2d 821, 825-26 (E.D. Wis. 2007) (improper filing of answer to amended complaint in state court rather than federal court does not warrant default judgment when the procedural posture of the case was unique and the movant was not prejudiced by the improper filing). Monty's motion for entry of default is **denied**.

After careful consideration, HWAG's request for costs and fees in having to respond to Monty's motion for entry of default is also denied. However, counsel is

expected to be familiar with the Standards for Professional Conduct discussed above and conduct themselves accordingly. Zealous representation of one's client, on the one hand, and the civil and professional treatment of one's adversary, on the other, need not be mutually exclusive.

**Motion to Dismiss Standard**

"To state a claim, a complaint must first provide 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Bonnstetter v. City of Chi.*, 2016 U.S. App. LEXIS 1795, 7 (7th Cir. Feb. 3, 2016) (quoting Fed. R. Civ. P. 8(a)(2)). "A pleader's responsibility is to state a claim for relief that is plausible on its face." *Huri v. Office of the Chief Judge of the Circuit Court of Cook Cnty.*, 804 F.3d 826, 832-33 (7th Cir. 2015). In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim the court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the non-moving party. *Id.* "In an action for slander, 'the particular words complained of shall be set forth in the complaint.'" *Schindler v. Seiler*, 474 F.3d 1008, 1010 (7th Cir. 2007) (citing Wis. Stat. § 802.03(6)).

**Analysis**

In opposing the motion to dismiss, Monty raises two preliminary arguments that can be dealt with quickly. He alleges that HWAG has not complied with the local rules of this court in two ways. First, he says that HWAG did not comply with Civil Local Rule 7(a)'s requirement that the motion to dismiss be accompanied by a separate

memorandum. Second, he says that HWAG did not comply with Civil Local Rule 7(d) (it actually should be 7(j)(2)) when it failed to file and serve a copy of several unpublished cases upon which it relies in its motion to dismiss. He argues that both warrant denial of the motion to dismiss. (ECF No. 44 at 1-2.)

It is true that Civil Local Rule 7(a) requires that every motion be accompanied by a supporting memorandum or a certificate stating that no memorandum will be filed. The use of the term "accompanied" implies that the motion and the memorandum are to be separate, although the rule does not expressly say so. HWAG's motion included nine pages of argument explaining the basis for the motion, and Monty does not contend that he has been prejudiced by the memorandum not being in a separate document from the motion itself.

As to HWAG's failure to file and serve a copy of those unpublished cases upon which it relied in its motion to dismiss, Civil Local Rule 7(j) does require parties to file a copy of any "unreported" (not unpublished, as Monty says) decisions upon which they rely. Ironically, as HWAG points out, Monty did not comply with Rule 7(j) in his submission. More importantly, as with the argument above, Monty does not contend that he could not find the unreported cases cited by HWAG and that he has been prejudiced by not having them at the time he was responding to the motion to dismiss. HWAG subsequently provided copies of the unreported cases with its reply brief.

The local rules "are intended to be enforced primarily upon the Court's own initiative, and the filing of motions alleging noncompliance with a rule may be reserved for egregious cases." Gen. L.R. 1. Neither of the alleged violations of Civil Local Rule 7 warrant any type of sanction, let alone one as severe as denying some or all of the motion to dismiss. Thus, the court now turns to the merits of HWAG's motion.

The following facts, relevant to the motion to dismiss, are taken from Monty's Amended Counterclaims. (ECF No. 43.) Monty alleges "on information and belief" that on May 3, 2017, "someone for and/or on behalf of HWAG (a 'HWAG Representative') contacted the General Manager of Racine Hyundai, Christian Rano, by telephone (the 'Rano Call')." (ECF No. 43, ¶ 19.) Monty alleges, again on information and belief, that during the Rano Call Rano was told that "Monty had, without authority, accessed the Hyundai West Allis VinSolutions database ('HWAG VinSolutions Database') and taken information from such database, where such information was purportedly proprietary to HWAG." (ECF No. 43, ¶ 20.)

Also on information and belief, Monty alleges that an HWAG representative placed another phone call in May 2017, this time to a district manager for Hyundai Motor America named Jim Mahoney (the "Mahoney Call"), who was essentially told the same thing Rano was told. (ECF No. 43, ¶¶ 24-25.) Mahoney allegedly relayed the conversation to someone named Scott Waller at Racine Hyundai, who in turn relayed the substance of the call to Monty. (ECF No. 43, ¶¶ 26-28.)

Finally, Monty alleges that on May 4, 2017, HWAG's counsel, Jay L. Statland, sent a letter to Jim Bozich, the owner of Racine Hyundai, accusing Monty of having accessed HWAG's proprietary information, customer information and trade secrets and of giving HWAG proprietary information to some other employee at Racine. (ECF No. 43, ¶¶ 31-33.)

Monty was fired from Racine Hyundai on June 19, 2017. (ECF No. 43, ¶ 97.)

### a. Defamation by libel

Monty's first counterclaim is entitled, "Defamation by Libel." It alleges that the Statland letter contains false information that, if believed, tends to harm the reputation of Monty (ECF No. 43, ¶¶ 50-51), and that Monty has suffered humiliation, mental anguish, physical injury, and damage to his reputation as well as monetary damages in connection with his loss of employment at Racine Hyundai. (ECF No. 43, ¶¶ 52-54.) In moving to dismiss the first counterclaim, HWAG argues that the Statland letter is absolutely privileged because it was written by an attorney in anticipation of litigation.

The elements of a common law action for defamation are: (1) a false statement; (2) communicated by speech, conduct, or in writing to a person other than the one defamed; and (3) the communication is unprivileged and tends to harm one's reputation, lowering him in the estimation of the community or deterring third persons from associating with him. *Schindler v. Seiler*, 474 F.3d 1008, 1010 (7th Cir. 2007) (citing *Torgerson v. Journal/Sentinel, Inc.*, 210 Wis. 2d 524, 563 N.W.2d 472, 477 (1997)).

Communications are privileged if they are (1) relevant to the matter being considered in the judicial proceedings, and (2) made in a procedural context which is recognized as affording absolute privilege. *Converters Equipment Corp. v. Condes Corp.* 80 Wis. 2d 257, 265, 258 N.W.2d 712 (1977). An attorney is "absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding." *Rady v. Lutz*, 150 Wis. 2d 643, 648, 444 N.W.2d 58 (Ct. App. 1989) (quoting the Restatement (Second) of Torts, sec. 586 (1977)). If the Statland letter is absolutely privileged, it cannot serve as the basis of a claim for defamation by libel.

The Statland letter accuses Monty of misappropriating confidential information belonging to his former employer. It was sent to Racine Hyundai, Monty's new employer, insisting that it cease and desist all use of the information and return any materials which Racine Hyundai had gotten from Monty wrongfully accessing his former employer's VIN Solutions database. The letter states that Statler has been directed by his client "to pursue any and all rights and remedies it may have available" in the event Racine Hyundai does not return the identified materials. The letter is clearly a communication preliminary to a proposed judicial proceeding and, as such, is absolutely privileged and cannot form the basis of a defamation by libel suit. Thus, the court grants HWAG's motion to dismiss count one.

### b. Defamation by slander

HWAG next argues Monty failed to plead the particular words complained of with regard to the phone calls that form the basis for Monty's defamation by slander and slander per se counterclaims—the second, third, fourth, and fifth counterclaims. For a defamation claim, the particular words complained of must be set forth in the complaint. *Ashker v. Aurora Medical Group, Inc.*, 2013 WI App 143, ¶ 11, 352 Wis. 2d 193, 841 N.W.2d 297 (citing Wis. Stat. § 802.03(6)). In a motion to dismiss, the court determines whether a communication is capable of a defamatory meaning; if a communication cannot reasonably be considered defamatory, the claim should be dismissed. *Starobin v. Northbridge Lakes Dev. Co.*, 94 Wis. 2d 1, 10, 287 N.W.2d 747 (Ct. App. 1980).

Monty's counterclaims state that Rano was contacted by a representative of HWAG and told that "Monty had, without authority, accessed the Hyundai West Allis VinSolutions database and taken information from such database, where such information was purportedly proprietary to HWAG." (ECF No. 27, ¶ 20.) A similar allegation is made regarding a call placed on behalf of HWAG to Mahoney. (ECF No. 27, ¶ 22.) In response to HWAG's motion to dismiss, Monty amended his counterclaims to add detail regarding the conversation Rano had with the HWAG representative. (ECF No. 43, ¶¶ 22-23.)

The problem with the counterclaims, including the amended counterclaims, is that, although they *do* allege that HWAG "communicated multiple false statements, attributing actions to Mr. Monty that he never performed" (ECF No. 43, ¶¶ 57, 66, 75 and 85), they never specifically allege that the false statements are those that are discussed in earlier paragraphs of the counterclaims. Perhaps Monty thought that was implied. Perhaps he even thought that he *had* specifically alleged that the statements communicated by the HWAG representative in the Rano Call and in the Mahoney Call were false. But he has not.

To satisfy the requirements of Wis. Stat. § 802.03(6), the plaintiff must specify what statements were allegedly false, as opposed to simply stating that defendant made false statements. *See Ashker v. Aurora Medical Group, Inc.*, 2013 WI App 143, ¶ 11. Although Monty has identified in his counterclaims statements communicated to Rano and Mahoney by an HWAG representative, and although he has said that an HWAG representative made false statements in the Rano Call and in the Mahoney Call, he has not connected the two allegations and alleged that the false statements to which he refers are those specifically identified in earlier paragraphs of the amended counterclaims. Thus, HWAG's motion to dismiss Counts Two through Five of the Amended Counterclaims is **granted**.

In the event Monty amends the counterclaims to specifically identify the false statements that are the subject of the defamation by slander counterclaims, there are

two arguments raised by HWAG in its reply brief that bear discussion in an effort to head off another motion to dismiss. Responding to the additional detail supplied by Monty in his amended counterclaims, HWAG argues that the statement to Rano that "you have an employee named Shawn Monty who is accessing our system" is not defamatory. As support, it relies upon Rano's response to HWAG (as communicated to Monty): "I told them it was their responsibility to take you out of their system[,]" indicating that Rano did not believe that Monty had done anything wrong. (ECF No. 46 at 6-7.) However, Rano's response to HWAG may have been nothing other than an attempt to deflect any suggestion that Racine Hyundai had done anything wrong. It does not necessarily evidence Rano's opinion as to whether Monty had, indeed, done something he was not authorized to do. Certainly the fact that Monty was fired shortly thereafter suggests that Rano and perhaps others at Racine Hyundai *did* have concerns about Monty brought on by the phone calls from HWAG.

HWAG also argues in its reply brief that Monty's counterclaims for defamation by slander are not actionable without pleading and proving special damages. (ECF No. 46 at 7.) However, Monty is not required to plead special damages. Although it is true that historically in Wisconsin slander was not actionable in the absence of actual pecuniary or "special" damages, *see Martin v. Outboard Marine Corp.*, 15 Wis.2d 452, 459, 113 N.W.2d 135 (1962), four categories of slander are actionable without alleging special damages, including those imputing some conduct "affecting the plaintiff in his or her

business profession[.]" *Bauer v. Murphy*, 191 Wis.2d 518, 524-525, 530 N.W.2d 1 (Ct. App. 1995). To the extent the statements attributed to HWAG in the amended counterclaims, accusing Monty of misappropriating confidential and proprietary information, are the false statements to which the slander counterclaims refer, they affect Monty in his business or profession and are actionable per se.

### c. Tortious interference

The sixth and final count in Monty's amended counterclaims is entitled, "Interference with Prospective Economic Advantage." Monty alleges on information and belief that HWAG knew he was employed at Racine Hyundai (ECF No. 43, ¶ 94), and that through the Rano Call, the Mahoney Call and the Statland Letter it intended to interfere with his relationship with Racine Hyundai. (ECF No. 43, ¶ 97.)

In moving to dismiss the sixth count, HWAG argues that Wisconsin law does not recognize a tort of interference with prospective economic advantage. (ECF No. 42 at 6.) It argues that, to the extent he is attempting to assert a claim for tortious interference with a business relationship, his claim fails because he has not alleged that "Racine Hyundai breached its contract with him or that HWAG caused Racine Hyundai to terminate [his] employment." (ECF No. 42 at 7.)

In response, Monty disputes that Wisconsin does not recognize a cause of action for tortious interference with prospective economic advantage, relying on *Anderson v. Regents of University of California*, 203 Wis. 2d 469, 554 N.W.2d 509 (Ct. App. 1996).

As HWAG contends, the tort discussed in *Anderson v. Regents of University of California* has been described in subsequent cases as tortious interference with a contract. *See Avon Hi-Life, Inc. v. Lauren Agrisystems, Ltd.*, No. 13-cv-36-bbc, 2013 WL 5953133, at *12 (W.D. Wis. Mar. 25, 2013). A claim for tortious interference with a contract under Wisconsin law requires proof of five elements: (1) the plaintiff had a contract or a prospective contractual relationship with a third party, (2) the defendant interfered with that relationship, (3) the interference by the defendant was intentional, (4) there was a causal connection between the interference and damages, and (5) the defendant was not justified or privileged to interfere. *Briesemeister v. Lehner*, 2006 WI App 140, ¶ 48, 295 Wis. 2d 429, 720 N.W.2d 531.

However, the conflict over labels is unnecessary. "[W]hen a court analyzes a complaint to determine whether it states a particular claim for relief, the label given the claim in the complaint is not dispositive." *Burbank Grease Services, LLC v. Sokolowski*, 2006 WI 103, ¶ 45, 294 Wis. 2d 274, 717 N.W.2d 781. The United States Court of Appeals for the Seventh Circuit has described the tortious interference doctrine in Wisconsin as requiring a plaintiff to show that the defendant interfered with some bargained-for right or a sufficiently certain, concrete, and definite contract-like relationship between the plaintiff and a third party. *See Shank v. William R. Hague, Inc.*, 192 F.3d 675, 689 (7th Cir. 1999). While HWAG argues that the tortious interference counterclaim must fail because Wisconsin does not recognize the tort as labeled by Monty, Monty's allegations

support a claim for tortious interference with contract that is plausible on its face under Wisconsin law.

The amended counterclaims allege that Monty had an employment agreement with Racine Hyundai for at least a six month period. (ECF No. 43, ¶¶ 15-18.) It further alleges that a representative of HWAG called Monty's supervisor and said, "[y]ou have an employee named Shawn Monty who is accessing our system[]" (ECF No. 43 ¶¶ 19, 22), an allegation that claims that HWAG was aware of an employment relationship between Monty and Racine Hyundai. The allegation that the representative from HWAG asked, "[w]hat are you going to do about it?" (ECF No. 43 ¶ 22) is consistent with the allegation that the interference was intentional. The amended counterclaims further allege that Monty was fired on June 19, 2017 (*Id*. at ¶ 37) and that, to date, Monty has been unable to find a job in the car sales business. (*Id*. at ¶ 42.) Finally, the amended counterclaims allege that HWAG was not justified in inducing Racine Hyundai to terminate his employment. (ECF No. 43, ¶ 99.)

In short, the amended counterclaims set forth sufficient facts to state a claim that HWAG intentionally interfered with Monty's employment relationship with Racine Hyundai which caused Racine Hyundai to terminate his employment.

**IT IS THEREFORE ORDERED** that HWAG's motion to dismiss Counts One through Five of Monty's Counterclaim is **granted**. HWAG's motion to dismiss Count Six

is **denied.** Monty's motion for default judgment is **denied**. Monty may file a second amended answer and counterclaim no later than **January 5, 2018**.

Dated at Milwaukee, Wisconsin this 19th day of December, 2017.

_____
WILLIAM E. DUFFIN
U.S. Magistrate Judge